# United States District Court
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| WHITE OPERATING COMPANY | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:23-CV-0525-S |
| | § | |
| BANK OF AMERICA, N.A. | § | |

## MEMORANDUM OPINION AND ORDER

This Memorandum Opinion and Order addresses Defendant Bank of America, N.A.'s Motion to Dismiss Plaintiff's First Amended Complaint ("Motion") [ECF No. 81]. The Court has reviewed the Motion, Defendant's Brief in Support of the Motion ("Defendant's Brief") [ECF No. 82], Plaintiff White Operating Company's Response to the Motion [ECF No. 86] and Brief in Support of Its Response to the Motion ("Response") [ECF No. 87], Defendant's Reply in Support of the Motion ("Reply") [ECF No. 89], all supplemental briefing [ECF Nos. 95, 96, 100, 102], the arguments of counsel at the October 4, 2023, hearing on the Motion, and the applicable law. For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion.

## I. BACKGROUND

In this lawsuit, Plaintiff seeks payment from Defendant for "Oklahoma oil, condensate, liquids[,] and other hydrocarbons" ("Hydrocarbons") sold nearly eight years ago. First Am. Compl. ("Amended Complaint") [ECF No. 77] ¶ 16. The purchaser of the Hydrocarbons was Murphy Energy Corporation, together with its parent company and affiliates (collectively, "Murphy"), a midstream provider of transportation, storage, and marketing services for oil and gas producers. *Id.*; Def.'s Br. ¶ 7. In 2012, Murphy entered into a loan agreement with Defendant. Am. Compl. ¶ 11. Pursuant to the agreement, Murphy established a deposit account to hold proceeds from Murphy's accounts receivable. *Id.* ¶ 15. Defendant swept the account nightly. *Id.* The sweeps "created additional borrowing capacity," and Defendant "was obligated to re-advance funds" to

Murphy. Def.'s Br. ¶ 10. Defendant allegedly applied the swept funds against Murphy's obligations to Defendant. Am. Compl. ¶ 22. Defendant also "would allegedly transfer into [Murphy's] operating account sufficient funds to pay Murphy's prior month's purchases from [Plaintiff]." *Id.* ¶ 28.

In June, July, and August of 2016, Plaintiff sold Hydrocarbons to Murphy. *Id.* ¶ 16. According to Plaintiff, the Hydrocarbons were "impressed with a lien under the [Oil and Gas Owners' Lien Act of 2010 ("Lien Act"), OKLA. STAT. tit. 52, § 549] in favor of [Plaintiff]." *Id.* ¶ 17. When Murphy resold the Hydrocarbons to a third party, the lien attached to the proceeds from the sales. *Id.* ¶¶ 22-23. Murphy owed Plaintiff $2,586,956.86 for the Hydrocarbons, which it did not pay. *Id.* ¶¶ 18, 21. Plaintiff alleges that Defendant knew Murphy could not pay for the Hydrocarbons but did not prevent Murphy from continuing to purchase from Plaintiff. *Id.* ¶¶ 31-32. Even though Defendant "replenished" Murphy's account, Defendant allegedly "controlled exactly what funds it advanced to Murphy to pay expenses" and "intentionally did not approve payments to [Plaintiff]." *Id.* ¶¶ 33-34.

Murphy filed a Chapter 11 bankruptcy petition on October 4, 2016. *Id.* ¶ 24. In connection with the bankruptcy case, Murphy filed an adversary proceeding complaint against Plaintiff and Defendant, among others, to determine the nature, extent, validity, and priority of the parties' liens and related rights. Def.'s Br. ¶¶ 11-12; *see also* Am. Compl. ¶ 42.

Plaintiff filed this lawsuit in Oklahoma state court on May 27, 2021. Notice of Removal [ECF No. 1] ¶ 24. Defendant removed the case to the Western District of Oklahoma. *Id.* at 1. On March 8, 2023, pursuant to a motion filed by Defendant, the Western District of Oklahoma transferred the case to this Court. Order ("Transfer Order") [ECF No. 46] 20-21. In its Amended Complaint, filed after transfer, Plaintiff brings claims for foreclosure of lien under the Lien Act,

declaratory judgment pursuant to the Production Revenue Standards Act ("PRSA"), OKLA. STAT. tit. 12, § 570, negligence per se, intentional interference with contractual relations, conversion, fraud, constructive fraud, and unjust enrichment. Am. Compl. ¶¶ 43-93. Defendant filed the Motion, in which it seeks dismissal of the Amended Complaint in its entirety.

## II. LEGAL STANDARD

To defeat a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The court must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007) (citation omitted). However, the court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (citation omitted). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted). At the motion to dismiss stage, the Court does not evaluate the plaintiff's likelihood of success. It only determines whether the plaintiff has stated a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977).

## III. ANALYSIS

Defendant primarily moves to dismiss the Amended Complaint on the ground that determinations in the bankruptcy proceeding bar Plaintiff's claims under res judicata and collateral estoppel principles. Def.'s Br. ¶ 6. As additional grounds for dismissal, Defendant argues that the Bankruptcy Court's order approving debtor-in-possession financing ("DIP Order") released Defendant from liability, *id.* ¶¶ 91-95, and that Plaintiff has not plausibly alleged certain of its claims, *id.* ¶¶ 60-89. The Court considers each argument in turn.

### *A. Res Judicata and Collateral Estoppel*

"Although *res judicata* generally cannot be raised in a motion to dismiss[,] . . . dismissal under Rule 12(b)(6) is appropriate if the *res judicata* bar is apparent from the complaint and judicially noticed facts and the plaintiff fails to challenge the defendant's failure to plead it as an affirmative defense."[1] *Anderson v. Wells Fargo Bank, N.A.*, 953 F.3d 311, 314 (5th Cir. 2020) (citing *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 n.2 (5th Cir. 2005)); *see also Kaswatuka v. Dall./Fort Worth Int'l Airport Bd.*, 853 F. App'x 916, 917 (5th Cir. 2021). Here, Plaintiff challenges Defendant's failure to plead res judicata and collateral estoppel as affirmative defenses. *See* Resp. 9-10. As such, the conditions set forth in *Anderson* are not met, and the Court concludes that Defendant's res judicata and collateral estoppel arguments are premature. *See, e.g., Giddy Holdings, Inc. v. Kim*, No. 1:20-CV-434-DAE-ML, 2021 WL 2773019, at *4 (W.D. Tex. June 7, 2021), *report and recommendation adopted by* 2021 WL 8442028 (W.D. Tex. July 2, 2021); *CRU Shreveport, LLC v. United Nat'l Ins. Co.*, No. 20-CV-151, 2020 WL 5948283, at *6 (W.D. La. Sept. 1, 2020), *report and recommendation adopted by* 2020 WL 5949977 (W.D. La.

---

[1] As collateral estoppel is also an affirmative defense, precedent on res judicata is equally applicable to Defendant's collateral estoppel arguments. *See, e.g., Wilson v. Evonik Corp.*, No. 19-14741, 2020 WL 5820036, at *3 (E.D. La. Sept. 30, 2020).

Oct. 7, 2020). This ruling is without prejudice to Defendant filing a later motion based on res judicata and/or collateral estoppel.

### B. DIP Order

For the same reason, the Court rejects Defendant's argument that the DIP Order bars Plaintiff's claims. *See* Def.'s Br. ¶¶ 91-95. Defendant argues that the DIP Order is "*res judicata* as to any attempt by [Plaintiff] to assert claims against [Defendant] related to the" loan agreement Defendant entered with Murphy. Reply ¶ 28. Because the Court declines to analyze preclusion arguments at this time, the Court denies without prejudice Defendant's request for dismissal based on the DIP Order.

### C. Failure to State a Claim

In addition to its preclusion arguments, Defendant moves to dismiss some of Plaintiff's causes of action for failure to state a claim. Def.'s Br. ¶¶ 60-89. Before proceeding to the merits of this argument, the Court must determine whether to apply Oklahoma or Texas law. As noted above, this case was originally filed in Oklahoma state court and removed to Oklahoma federal court. The Western District of Oklahoma then transferred the case to this Court pursuant to 28 U.S.C. § 1404(a). *See* Transfer Order 13 & n.7. In the transfer order, the Western District of Oklahoma stated that Oklahoma law applied to Plaintiff's claims. *Id.* at 19.

Defendant challenges Plaintiff's tort claims under Texas law, while Plaintiff counters that Oklahoma law applies. *See* Def.'s Br. ¶¶ 66-89; Resp. 8. "In diversity cases, when the initial forum selected by a plaintiff is proper, the transferee court must apply the same state law and choice of law rules that the transferor court would have applied but for the transfer." *Sims v. Kia Motors of Am., Inc.*, 839 F.3d 393, 398 n.4 (5th Cir. 2016) (citation omitted). Defendant notes, and the Court agrees, that "the elements of Plaintiff's [tort] claims are substantively identical under Texas and

5

Oklahoma law." Def.'s Suppl. Br. in Supp. of Mot. [ECF No. 95] ¶ 16. Under Oklahoma's choice-of-law rules, if there is no conflict between two states' laws, no choice-of-law analysis needs to be conducted. *Patten Air, LLC v. Howard*, No. CIV-18-0004-F, 2018 WL 9837822, at *3 (W.D. Okla. Oct. 15, 2018) (citation omitted). Therefore, the Court will analyze Defendant's challenges to Plaintiff's claims under Oklahoma law.

*i. Lien Act Claim*

Plaintiff first brings a claim for foreclosure of lien under the Lien Act. Am. Compl. ¶¶ 43-51. The Lien Act provides: "To secure the obligations of a first purchaser to pay the sales price, and to secure the obligation of any person to pay any proceeds . . . each interest owner is hereby granted an oil and gas lien to the extent of the interest owner's interest in oil and gas rights." OKLA. STAT. tit. 52, § 549.3(A). "Except for a permitted lien," this lien "takes priority over any other lien." *Id.* § 549.7. Plaintiff alleges that it is an interest holder under the Lien Act, sold Hydrocarbons to Murphy, has not been paid for the Hydrocarbons, and can trace the proceeds from its wells to Murphy's account with Defendant. Am. Compl. ¶¶ 47-51.

In addition to preclusion-related arguments, which the Court does not address at this time, Defendant urges the Court to dismiss Plaintiff's Lien Act claim for two reasons. First, Defendant contends that "the Amended Complaint makes no effort to identify any property of [Plaintiff] in [Defendant's] current possession to which [Plaintiff's] asserted lien attaches or against which [Plaintiff] could foreclose" because the Hydrocarbons were sold seven years ago. Def.'s Br. ¶ 61. But Plaintiff does identify property allegedly in Defendant's possession: "proceeds from its wells," which Plaintiff allegedly "can trace . . . to the [d]eposit [a]ccount and therefore to [Defendant]." Am. Compl. ¶ 51. Under the Lien Act, an oil and gas lien "[c]ontinues uninterrupted and without lapse in and to all proceeds." OKLA. STAT. tit. 52, § 549.3(B)(3); *see also Gaskins v. Texon, LP*,

6

321 P.3d 985, 990-91 (Okla. Civ. App. 2013) (stating that the Lien Act lien "attaches to the proceeds of sale"). Accepting all well-pleaded facts as true and viewing them in the light most favorable to Plaintiff, as it must, the Court determines that Plaintiff's allegations suffice.

Defendant also argues in a footnote that "'Foreclosure of a Lien' [is not] a cause of action under the [Lien Act] or applicable law." Def.'s Br. ¶ 62 n.49. Defendant cites no authority in support of this proposition. And the Lien Act contemplates "an action to enforce the oil and gas lien . . . in a court of competent jurisdiction." OKLA. STAT. tit. 52, § 549.10(A). In the absence of authority to the contrary, the Court declines to dismiss Plaintiff's Lien Act claim.

*ii. PRSA Claim*

Next, Plaintiff requests a declaratory judgment under the PRSA that Plaintiff's "lien to the [p]roceeds of the Hydrocarbons deposited in Murphy's account [with Defendant] is valid, perfected[,] and has priority over any lien asserted to said proceeds by [Defendant]." Am. Compl. 9. Plaintiff also seeks a declaration that it is entitled to recover damages and attorney's fees. *Id.* In support, Plaintiff argues that Section 570.10(A) of the PRSA imposes a duty on Defendant to keep the proceeds from the sale of the Hydrocarbons "separate and distinct and to hold the [p]roceeds for [Plaintiff] and to pay the [p]roceeds to [Plaintiff]." *Id.* ¶ 55. Defendant urges that such a claim has been "soundly rejected" by courts that have "uniformly h[e]ld that the PRSA does not create an implied trust." Def.'s Br. ¶ 65 (citation omitted).

Section 570.10(A) of the PRSA provides:

> All proceeds from the sale of production shall be regarded as separate and distinct from all other funds of any person receiving or holding the same until such time as such proceeds are paid to the owners legally entitled thereto. Any such person holding revenue or proceeds from the sale of production shall hold such revenue or proceeds for the benefit of the owners legally entitled thereto. Nothing in this subsection shall create an express trust.

7

OKLA. STAT. tit. 52, § 570.10(A). This provision has two "shall" clauses: (1) proceeds shall be regarded as separate and distinct until they are paid; and (2) the entity holding the proceeds shall hold them for the benefit of the owners.

As to the first clause, "no Oklahoma court has recognized . . . a trust or a fiduciary duty resulting from the provisions of the [PRSA]." *McKnight v. Linn Operating, Inc.*, No. CIV-10-30-R, 2010 WL 9039794, at *3 (W.D. Okla. Apr. 1, 2010); *see also Hitch Enters., Inc. v. Cimarex Energy Co.*, 859 F. Supp. 2d 1249, 1262-63 (W.D. Okla. 2012) ("[I]t is clear under extant case law that the plaintiffs may not pursue a claim for breach of fiduciary duty under [S]ection 570.10(A)." (citation omitted)). And courts analyzing the PRSA have held that despite the reference to keeping proceeds separate and distinct, Section 570.10(A) does not require segregation. *McKnight*, 2010 WL 9039794, at *3 (citation omitted); *see also id.* at *4 (holding that the PRSA "does not actually require actual segregation of specifically identifiable funds for the benefit of royalty owners"). The Court finds this precedent persuasive and agrees with the courts' interpretation of the PRSA.

As to the second clause, "the PRSA is a regulatory scheme for how operators and owners will interact with regard to the well." *Gaskins*, 321 P.3d at 990; *see also Samson Res. Co. v. SemCrude, L.P. (In re SemCrude, L.P.)*, 407 B.R. 140, 153-54 (Bankr. D. Del. 2009) ("[T]he PRSA provides a comprehensive regulatory structure governing how interest owners and operators work together at the wellhead, and serves to hold operators accountable to their interest owners."). It is unclear from Plaintiff's pleadings and briefing whether or how this statute gives rise to a cognizable declaratory judgment claim in a lawsuit between a producer and a midstream provider's lender. Plaintiff does not plead sufficient facts in the Amended Complaint, and Plaintiff does not argue these points in the Response. *See In re SemCrude, L.P.*, 407 B.R. at 155 ("The reported

8

decisions that have applied or construed other sections of the PRSA . . . all have involved interest owners who sued operators or producers for delinquent royalty payments." (citation omitted)).

For the foregoing reasons, the Court concludes that Plaintiff has not adequately pleaded that the PRSA applies to its claims against Defendant or that it is entitled to a declaratory judgment under Section 570.10(A). And Plaintiff also does not meaningfully grapple with precedent related to PRSA claims in its briefing. *See* Resp. 20-21. As such, the Court dismisses Plaintiff's PRSA claim without prejudice.

*iii. Tort Claims*

Finally, Plaintiff brings claims for negligence per se, intentional interference with contractual relations, conversion, fraud, constructive fraud, and unjust enrichment. Am. Compl. ¶¶ 58-93. Defendant argues that Plaintiff has not plausibly pleaded these tort claims, Def.'s Br. ¶¶ 66-89, and that, therefore, both the claims and Plaintiff's request for punitive damages and attorney's fees must be dismissed, *id.* ¶ 90. The Court has reviewed Plaintiff's allegations regarding negligence per se,[2] conversion, fraud, and constructive fraud.[3] The Court determines that Plaintiff has adequately pleaded all causes of action except for its claim for constructive fraud.

Constructive fraud "may be defined as any breach of duty which, regardless of the actor's intent, gains an advantage for the actor by misleading another to his prejudice." *Patel v. OMH Med. Ctr., Inc.*, 987 P.2d 1185, 1199 (Okla. 1999) (citation omitted). In Oklahoma, a constructive fraud claim has five elements: (1) the defendant owed the plaintiff a duty of full disclosure; (2) the defendant misstated a fact or failed to disclose a fact; (3) the defendant's misstatement or omission

---

[2] Plaintiff's negligence per se cause of action is based in part on the dismissed PRSA claim. However, the claim is also based on Plaintiff's Lien Act claim, which survives dismissal. *See* Am. Compl. ¶¶ 58-65.

[3] Defendant only challenges Plaintiff's intentional interference with contractual relations and unjust enrichment claims on res judicata and/or collateral estoppel grounds, so there are no additional Rule 12(b)(6) arguments for the Court to consider. *See* Def.'s Br. ¶¶ 71-73, 88-89.

9

was material; (4) the plaintiff relied on the material misstatement or omission; and (5) the plaintiff suffered damages as a result. *Grubb v. DXP Enters., Inc.*, 85 F.4th 959, 972 (10th Cir. 2023) (citation omitted). Here, Plaintiff fails to allege the first element, a duty of full disclosure. According to Plaintiff, "the [PRSA] provides a legal duty on which [Plaintiff] can base a claim for constructive fraud." Am. Compl. ¶ 88. For the reasons set forth above, Plaintiff has not adequately pleaded a duty under the PRSA. Further, Plaintiff fails to allege any facts relating to materiality or reliance. As such, the Court dismisses this claim without prejudice.

Finally, because the Court finds that Plaintiff's predicate claims, in large part, survive dismissal, the Court denies Defendant's request to dismiss the claims for punitive damages and attorney's fees at this stage.

## IV. CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion to Dismiss [ECF No. 81]. The Court **GRANTS** the Motion as to Plaintiff's PRSA and constructive fraud claims but otherwise **DENIES** the Motion. Pursuant to the Court's February 21, 2024, Order [ECF No. 104], the parties must submit a proposed scheduling order by **April 12, 2024**.

**SO ORDERED.**

SIGNED March 29, 2024.

KAREN GREN SCHOLER
**UNITED STATES DISTRICT JUDGE**